(104 So. 682)

## ALABAMA GREAT SOUTHERN R. CO. v. WILLIAMS. (6 Div. 595.)

(Court of Appeals of Alabama. June 9, 1925.)

**1. Master and servant ⬤⟶248—Doctrine of subsequent negligence held inapplicable to employee killed by jumping from camp car in front of locomotive.**

Where railroad employee was killed when he jumped from camp car immediately in front of moving locomotive, held that, even if deceased had put his head out of camp car to look, he was not in a place of peril, and engineer had right to assume that deceased would

not leave a place of safety, and hence doctrine of subsequent negligence is inapplicable.

**2. Railroads ☞367—Keeping of constant lookout by engineer sufficient until obstruction on track requires warning.**

An engineer, keeping a constant lookout, is performing full measure of his duty, until he discovers some obstruction on track, or so near thereto, that reasonable care suggests that signals of warning be given.

**3. Master and servant ☞286(29)—Refusal of affirmative charge for railroad causing death of employee jumping in front of locomotive held error.**

In action for death of railroad employee, killed when he jumped from door of camp car immediately in front of passing locomotive, evidence *held* to show that engineer was not guilty of any negligence proximately causing death of employee, and refusal of defendant's requested affirmative charge was error.

Appeal from Circuit Court, Jefferson County; John Denson, Judge.

Action for wrongful death by A. H. Williams, as administrator of the estate of James Williams, deceased, against the Alabama Great Southern Railroad Company. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

Stokely, Scrivner, Dominick & Smith and J. M. Gillespy, Jr., all of Birmingham, for appellant.

Where the whole evidence shows no negligence, the affirmative charge should be given for defendant. Nor. Ala. Ry. v. White, 14 Ala. App. 228, 69 So. 308. There can be no relief where one's injury is due solely to his own reckless and indifferent conduct. Va. Ry. Co. v. Linkous, 230 F. 89, 144 C. C. A. 386. Defendant was not guilty of subsequent negligence as there was not sufficient time to discover the peril and prevent the injury. Ball v. Semet-Solvay Co., 208 Ala. 648, 95 So. 50; Sims v. A. T. L. Co., 197 Ala. 151, 72 So. 328; Sou. Exp. Co. v. Roseman, 206 Ala. 681, 91 So. 612. Deceased had notice of the approach of the engine, and the engineer's failure to ring the bell or blow the whistle or to stop the engine, under the evidence, was not the proximate cause of the injury. Miller v. Can. Nor. (C. C. A.) 281 F. 664; Pheasant v. Dir. Gen. (C. C. A.) 285 F. 343.

Black & Harris, of Birmingham, for appellee.

The affirmative charge for defendant was properly refused. Brown v. Mobile E. Co., 207 Ala. 61, 91 So. 802; Penticost v. Massey, 201 Ala. 261, 77 So. 675; Drennen Co. v. Smith, 115 Ala. 396, 22 So. 442; Sou. Ry. v. Gullatt, 158 Ala. 502, 48 So. 472; W. U. T. Co. v. Brazier, 10 Ala. App. 308, 65 So. 95; Briggs v. B. R., L. & P. Co., 188 Ala. 262, 66 So. 95. A defendant is liable for his negligence resulting in injury to plaintiff, even where there is an intervening act, if the intervening act is insufficient to stand as the cause of the injury but for such negligence. Dye-Washburn Hotel Co. v. Aldridge, 207 Ala. 471, 93 So. 512; L. & N. v. Quick, 125 Ala. 553, 28 So. 14.

BRICKEN, P. J. This action is by the personal representative of a deceased employee of an interstate railroad, under the federal Employers' Liability Act (U. S. Comp. St. §§ 8657–8665).

The defendant requested the affirmative charge, which was refused, and the case submitted to the jury on the simple negligence count, which ascribed the death of plaintiff's intestate, as we construe it, to the negligence of the enginemen in charge of a locomotive being operated on defendant's line. The plea was the general issue, not guilty.

[1] It is without dispute in the evidence that plaintiff's intestate was an employee, one of an extra gang engaged in distributing slag and ties along the main line, and the locomotive that inflicted the injury was being used in this work. At the time of the catastrophe, the work train crew were engaged in switching cars loaded with slag. The deceased, with others, had gone to the camp cars for drinking water, as they had a right to do. The locomotive in forward was moving south on the main line passing the camp cars running from 15 to 30 miles per hour, and, as it approached the door of the camp car where deceased had gone for water, deceased leaped from the door immediately in front of the locomotive, and was caught by the pilot beam before he reached the ground and thrown off on the right-hand side, between the main line and the track on which the camp cars were standing. There was evidence going to show that shortly before the accident, after the locomotive had started south, in forward motion, deceased looked out of the door of the camp car and informed the witness Thomas that the locomotive was coming south. There was nothing to obscure his view of the approaching locomotive, or his hearing the noise incident to its operation. The only evidence that would afford an inference that this act of the deceased was discovered by the engine crew is the testimony of the engineer and that of the brakeman, who was in the gangway of the locomotive, that they were looking ahead. Therefore, assuming that the enginemen did discover the deceased when deceased put his head out of the car to look he was not then in a place of peril, and the enginemen had a right to assume that he saw the approaching locomotive, and would not leave a place of safety and put himself in peril of it. In these circumstances there is no room for application of the doctrine of subsequent negligence.

Mobile Light & Ry. Co. v. Roberts, 192 Ala. 486, 68 So. 815; Bickerstaff v. Ill. Cent. R. R., 210 Ala. 280, 97 So. 842.

[2] The witnesses to the accident testifying in behalf of plaintiff did not see the deceased until he had been stricken and the locomotive had come to a stop; and there is nothing in the circumstances attending the injury or in the testimony offered by the plaintiff in the least tending to contradict the testimony of Penick, the engineer, that he was keeping a constant lookout, which under the authorities was the full measure of his duty, until he discovered some obstruction on the track, or so near thereto that reasonable care would suggest that signals of warning be given. Louisville & Nashville R. R. Co. v. Williams' Adm'r, 199 Ala. 453, 74 So. 383. In that case—

"The evidence for the plaintiff further tended to show that at the time his intestate started to return to the north end of the bridge the train was not in sight nor within hearing, and that he walked in the center of the track; that the train which struck him was a passenger train, approaching from the south and moving at a speed of 40 or 45 miles an hour; and that the track south of the bridge was straight for three-fourths of a mile. Some of the witnesses for the defendant gave the length of straight track as one mile. The evidence further tended to show that the deceased had been walking on the bridge a minute and a half and had gotten about halfway across before the train reached it. The evidence of the engineer placed the deceased as 'two-thirds of the way toward the north end.' * * * He insisted that he had kept a constant lookout on the track, and that he did not see deceased until he got within a short distance of him, when deceased stepped from behind an upright brace of the bridge and when it was too late to do anything to save him. The engineer further testified that the track was straight and level, and that if deceased had been in the center of the rails of the track he would have seen him. The accident occurred about 9:30 o'clock in the morning."

On this phase of the evidence the court observed:

"In view of the evidence for plaintiff tending to show the distance the deceased had walked down the bridge, and the time consumed therein, with the track straight and level for a mile towards the south, and of the evidence of the engineer that had deceased been in the center of the track he could have seen him, it was a question for the jury whether those in charge of the approaching train exercised due care in keeping a lookout."

In that case it was conceded that no signal of the approach of the train was given, but this fact seems to have been treated as unimportant, for the reason, no doubt, that the duty to give signals did not arise until the engineer discovered some one on or near the track. If the rule was otherwise, under such conditions the engineer would be required to give constant signals as engine passed over every foot of the track.

In Louisville & Nashville R. R. Co. v. Thornton, 117 Ala. 274, 23 So. 778, the recovery was sustained solely for a failure of the brakeman in charge of the car to keep a lookout.

[3] In view of the undisputed evidence that plaintiff's intestate in this case was not actually at work on the track, but was in the camp car and jumped out of the door immediately in front of the passing locomotive, and the further fact that the witness Lewis is not shown to have any knowledge of a custom or rule of the company that required the engineer to blow the whistle or ring the bell in passing camp cars, we attach no importance to his statement that, "so far as he knew, that had been the rule," nor to the negative testimony of Thomas, "I ain't never heard no whistle blow; if the bell was rung, I didn't hear it." Plaintiff's witness Foster was reading, but testified that the whistle blew, but that he did not remember hearing the bell, and according to this witness he did not pay any attention to it.

We are of the opinion that the evidence as a whole shows that the engineer was not guilty of any negligence proximately causing the death of plaintiff's intestate, and that the trial court erred in refusing the affirmative charge requested by the defendant, and for this error the judgment is reversed.

Reversed and remanded.