181 So. 772

### HONEYCUTT v. BIRMINGHAM ELECTRIC CO.

### 6 Div. 57.

Supreme Court of Alabama.

June 2, 1938.

222

Clifford Emond, of Birmingham, for appellant.

Lange, Simpson & Brantley, of Birmingham, for appellee.

BROWN, Justice.

This is an action of trespass on the case by the appellant against appellee, to recover damages for personal injuries inflicted on her person in consequence of being struck by the rear end of a street car as it turned the corner, after having made a regular stop, at the intersection of First Avenue and 20th Street in the City of Birmingham.

The case went to the jury on the issues presented by the first count of the complainant and the defendant's pleas of not guilty and contributory negligence, pleaded in short by consent.

The said first count avers, inter alia, that plaintiff claims of the defendant, "damages, for that heretofore on, to-wit, the 5th day of November, 1934, plaintiff was a *pedestrian* along and upon a public highway in the City of Birmingham * * * and at said time and place an agent, servant or employee of the defendant, acting within the line and scope of his employment as such agent, servant or employee for the defendant, ran an electric street car into, upon or against plaintiff and as a proximate result thereof the plaintiff was injured," and that said injury was proximately caused by the negligence of the defendant's said agent or servant "in and about the operation and control of said electric street car." (Italics supplied.)

The evidence is without dispute that plaintiff immediately preceding her injury, had come into the city as a passenger on the Edgewood Street Car; that after she alighted therefrom at the regular stopping place, where the car stopped to allow passengers to disembark, she stood or stepped into the sweep of the rear end of the street car as it passed around the corner on its forward movement, and was injured. The plaintiff testified in respect to her movements after she disembarked, on her direct examination:

"When I did alight from the street car, I walked in the safety zone up toward the front of the street car and stood there waiting for the traffic to clear so I could cross to the southeast corner. Yes there were marks there in the street indicating what they call a safety zone. *I did not walk up in that zone.* I walked up pretty

close to it. I do not remember whether or not I walked between the line and the street car. I did not go out across the line into the street. I walked up the side of the car." (Italics supplied.)

And on cross-examination:

"I had ridden the Edgewood car line that morning. I suppose I had ridden it enough to know. I had been getting off there at First Avenue and knew that the car turned. * * * I got off the car at the rear right hand door. I do not remember if the conductor assisted me from the car platform. There was traffic between the street car line and sidewalk over there and I was afraid of the traffic—afraid to go any further. *I went up as far as the cross walk from the Webb Crawford Building to the Woodward Building.* While I was walking along going in the direction of First Avenue, the street car was not moving, it was standing still. It did not move for a few minutes; I waited for a few minutes. I observed the traffic light when it changed from one color to another. When it changed to green, the traffic was passing so rapidly that I knew that I couldn't get across. The street car was not moving at that time. The traffic was moving as fast as it could, and I realized the danger—I am talking about the traffic going north on Twentieth Street. When I saw the traffic, I stayed there until I thought I could have an opportunity to cross. I was afraid of one of them striking me. I stepped back and stepped about to the middle of the distance from the traffic to the car line. I thought that I was out of danger of both, and I looked behind me and I knew the street car was standing behind me. I realized the danger I was in and placed myself like that when I saw traffic moving off to keep from being struck. *I heard the street car moving behind me, I did not look around at it,* it knocked me over as I continued to watch the automobiles. I was watching both of them. I thought I was in between the two and realized the danger I was in." (Italics supplied.)

It appears from the record that the court gave special charges 37 and 40 "by consent of the parties."

"The court charges you that the defendant company in this case was under no duty to keep a lookout to prevent the plaintiff from coming in contact with the rear end of the street car as it rounded the curve of the track.

"(C) Given, C. B. Smith, Judge.

"This charge given by consent of parties, C. B. S.—J.

"The court charges you that if you are reasonably satisfied from the evidence that the plaintiff disembarked from the defendant's street car at the rear end and walked along the side of said car in the street to a point near the cross walk on the walk which crosses from the east side of 20th Street to the west side and along 1st Avenue North, and that while she was at said point the street car moved from 20th Street into 1st Avenue making a lefthand turn to proceed in a westerly direction along 1st Avenue and that at said time the plaintiff had her back toward the street car and because of the approaching traffic the plaintiff stepped backward without looking and was struck by the overhang of said street car as it proceeded along its tracks making said turn, this would constitute contributory negligence on the part of the plaintiff, and if the jury are further reasonably satisfied that said contributory negligence proximately contributed to cause her alleged injuries then you cannot give a verdict in favor of the plaintiff under Count One of the complaint.

"(C) Given, C. B. Smith, Judge.

"This charge given by consent of parties, C. B. S.—J."

The plaintiff's testimony clearly tends to support the hypothesis of said special charges, and to sustain the verdict of the jury.

The testimony of the plaintiff clearly shows that relation of passenger and carrier had terminated before her injury. This fact was recognized, and, conceded by the plaintiff's counsel in drawing Count One of the complaint, characterizing plaintiff as a "pedestrian," and in consenting to the giving of special instruction 37, set out above.

The evidence is without dispute that she was safely carried to her destination and sufficient time was allowed for her to disembark at the regular stopping place where a "safety zone was provided," in which she could stand out of danger of the traffic on the street and the street car as it moved forward; that she was injured by placing herself within the sweep of the rear end of the street car as it passed around the curve; that she was familiar with the situation and knew the street car tracks curved down First Avenue.

224

■ The evidence falls far short of showing, or tending to show that the plaintiff's peril, created by her own act in stepping back and standing within the sweep of the street car without taking the precaution to look after she realized the street car had begun to move, was discovered by the operatives of the street car.

■ It is well settled that actual knowledge of the peril is essential to liability under the last clear chance doctrine. Young v. Woodward Iron Co. et al., 216 Ala. 330, 113 So. 223; Central of Georgia R. Co. v. Bates, 225 Ala. 519, 144 So. 9; Emmett v. Alabama Great Southern R. Co., 226 Ala. 310, 146 So. 811; Johnson v. Louisville & Nashville R. Co., 227 Ala. 103, 148 So. 822.

In Birmingham Electric Co. v. Jones, 234 Ala. 590, 176 So. 203, the plaintiff was a prospective passenger, and there was evidence going to show that the defendant was guilty of initial negligence in failing to stop the car at the regular place for taking on passengers, and also evidence tending to show subsequent negligence after knowledge of the plaintiff's perilous position.

■ In the case at bar we fail to find such evidence as would justify the submission of the issues to a jury, and the affirmative charge might well have been given.

■ The giving of "Sole Proximate Cause" special instruction does not constitute reversible error, unless there is evidence tending to show simple negligence, and also subsequent negligence or wantonness. Coleman v. Hamilton Storage Co., Ala.Sup., 180 So. 553;[1] Boyette v. Bradley et al., 211 Ala. 370, 100 So. 647; McBride v. Barclay, 219 Ala. 475, 122 So. 642, 643; Lindsey v. Kindt, 221 Ala. 190, 128 So. 139.

For the reasons stated no injury resulted from giving the special charges, the predicate for several of the assignments of error, or in ruling on evidence adversely to appellant.

Affirmed.

ANDERSON, C. J., and THOMAS and KNIGHT, JJ., concur.